United States District Court
Southern District of Texas

**ENTERED**

April 27, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVA JAIMES LANDEROS, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 4:26-cv-00694 |
| v. | § | |
| | § | |
| WARDEN, Houston Contract Detention | § | |
| Facility, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER

The petitioner, Eva Jaimes Landeros, is a detainee in the custody of United States Department of Homeland Security, Immigration and Customs Enforcement (ICE) officials. Through counsel, she has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging her continued detention. (Dkt. No. 1). The federal respondents have filed a Response and Motion for Summary Judgment. (Dkt. No. 7). The petitioner has replied. (Dkt. No. 8). Having considered the parties' arguments and the applicable legal authority, the Court denies the Motion for Summary Judgment and grants in part the petition for a writ of habeas corpus.

## I.      BACKGROUND

The petitioner, a citizen of Mexico, entered the United States in February 2012 without inspection and has resided continuously in the United States for more than 13 years. (*See* Dkt. No. 1 at 16; Dkt. No. 1-3 at 9). The petitioner is a single mother to two United States citizen children— ages 17 and 12—who rely "heavily on [the petitioner] for their daily care, emotional guidance, and

financial support."[1]  (Dkt. No. 1 at 16; Dkt. No. 1-3 at 9).  The petitioner has no criminal history and has never been arrested.  (Dkt. No. 1 at 16; Dkt. No. 1-3 at 9).

On September 23, 2025, ICE arrested the petitioner while she was on her way to work.  (Dkt. No. 1 at 17; Dkt. No. 1-3 at 9).  She has been in ICE custody since that time.  (Dkt. No. 1 at 17).  Following her arrest by ICE, DHS served the petitioner with a Notice to Appear in immigration court, initiating removal proceedings, and charging her as inadmissible under 8 U.S.C. § 212(a)(6)(A)(i) for entering the United States without being admitted or paroled,  (*See id.*; Dkt. No. 1-3 at 4).  On January 13, 2026, an immigration judge, relying on the Board of Immigration Appeal's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), found that it lacked jurisdiction to consider the petitioner's request for release on bond.  (Dkt. No. 1 at 17; Dkt. No. 1-3 at 22).  The petitioner has a pending U-visa petition before United States Citizenship and Immigration Services (USCIS), which, if approved, petitioner claims would "provide lawful status and independently warrant her release from detention while that application remains under adjudication."  (Dkt. No. 1 at 18; *see also* Dkt. No. 1-3 at 9).  She also has a pending 42B-Cancellation of Removal Application.  (Dkt. No. 1-3 at 9).

On January 29, 2026, the petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging her continued detention.  (Dkt. No. 1).  Among other arguments, she alleges that her detention violates the Fifth Amendment Due Process Clause.  She seeks release from custody, among other relief.  The respondents have answered with a Response and Motion

---

[1] The petition indicates that the petitioner is married to Homero Martinez Cardozo (*see* Dkt. No. 1 at 16) but in the petitioner's sworn statement attached to the petition she states that she is a single parent and that she is a victim of domestic violence by her daughter's father. (Dkt. No. 1-3 at 9; *see also* Dkt. No. 1-3 at 30–48).

for Summary Judgment, opposing habeas relief.  (Dkt. No. 7).  The respondents do not contest the facts asserted in the petition or exhibits.  The petitioner has filed a reply.  (Dkt. No. 8).

## II.      LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)).  This includes noncitizen detainees who seek to challenge the legality of physical confinement "by executive direction[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (explaining that noncitizen detainees whose claims for relief "necessarily imply the invalidity" of their confinement must be brought in habeas because the claims "fall within the 'core' of the writ of habeas corpus"); *Hamdi*, 542 U.S. at 525 (explaining that the writ of habeas corpus "remain[s] a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law.") (citing *INS v. St. Cyr,* 533 U.S. 289, 301 (2001)).

"To obtain relief under § 2241, the [petitioner] must establish a violation of either the Constitution or federal law." *Fillingham v. United States*, 867 F.3d 531, 536 (5th Cir. 2017) (citing 28 U.S.C. § 2241(c)(3)).  "The habeas petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).  "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

**III.     ANALYSIS**

The petitioner argues that her ongoing detention violates her right to due process under the Fifth Amendment.[2]  The Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)).  The Supreme Court has explained that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  *Addington v. Texas*, 441 U.S. 418, 425 (1979); *see also Zadvydas*, 533 U.S. at 690 ("[T]his Court has said that government detention violates [the] [Fifth Amendment Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint.") (internal citations and quotation marks omitted) (emphasis in original).

It is clear that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."

---

[2] On February 6, 2026, in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) a divided panel of the Fifth Circuit decided the statutory question of whether noncitizens who were present in the United States and who had not been admitted or paroled were subject to detention under 8 U.S.C. § 1225(b)(2).  However, "*Buenrostro-Mendez* has no bearing on this Court's determination of whether [the petitioner] is being detained in violation of her constitutional right to procedural due process." *Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953, at *2 (W.D. Tex. Feb. 9, 2026); *see also Angel v. Noem*, No. 1:26-CV-00384-DAE, 2026 WL 594368, at *3 (W.D. Tex. Mar. 3, 2026) ("It is for the courts to decide whether the constitutional protections afforded pursuant to a given statute are adequate.  The mere existence of some protections under a statute does not relieve the Court of its responsibility to ensure that those protections are indeed constitutionally sufficient.").

*Zadvydas*, 533 U.S. at 693 (citing cases); *see also J. G. G.*, 604 U.S. at 673 ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation and internal quotation marks omitted); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("aliens who have established connections in this country have due process rights in deportation proceedings"); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"). "[O]nce the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law." *Muse v. Mullin*, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In *Mathews*, the Supreme Court explained that three factors generally guide the "specific dictates of due process":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Calhoun v. Collier*, 78 F.4th 846, 852–53 (5th Cir. 2023) (quoting *Mathews*, 424 U.S. at 335), *as revised* (Aug. 31, 2023). "Whether the Government has previously released an individual into the

community and later seeks to re-detain that person, or whether the individual within the United States has simply established a life here, procedural due process requires an individualized assessment consistent with the framework articulated in *Mathews*." *Lepe Hernandez v. Noem*, No. 5:26-CV-0694-JKP, 2026 WL 990024, at *5 (W.D. Tex. Apr. 13, 2026).

### A.    The Private Interest

The Court first considers the individual's private interest when determining whether government action violates a person's right to procedural due process.  The interest in being free from physical detention "is the most elemental of liberty interests[.]"  *Hamdi*, 542 U.S. at 529. "[O]ne's physical freedom is a paramount liberty interest, secured not just by statute but by the Constitution."  *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *3 (W.D. Tex. Oct. 21, 2025) (citing *Hamdi*, 542 U.S. at 529).  "A noncitizen's interest in his freedom pending the conclusion of his removal proceedings deserves great 'weight and gravity.'"  *Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880, at *6 (W.D. Tex. Oct. 16, 2025) (citing *Addington*, 441 U.S. at 427 and *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)); *see also Zamudio Sanchez v. Noem*, No. EP-25-CV-00403-DCG, 2026 WL 596133, at *12 (W.D. Tex. Mar. 2, 2026) ("Civil detainees possess a cognizable interest in their physical freedom during the pendency of their removal proceedings and a substantial liberty interest in not being confined unnecessarily.") (internal quotation marks and footnotes omitted).

Courts have found that noncitizens who have established connections in the United States by virtue of living in the country for a marked period of time acquire a liberty interest in being free from government detention without due process of law.  *See, e.g.*, *Vieira*, 2025 WL 2937880, at *6 (holding that the petitioner who had lived in the United States since 2022 "possesses a cognizable interest in his freedom from detention"); *Lugo Villanueva v. Mullin*, No. 1:26-CV-849-

RP, 2026 WL 1045719, at *4 (W.D. Tex. Apr. 15, 2026) (finding that the first *Mathews* factor weighed in the petitioner's favor when the petitioner had "possesse[d] a cognizable interest in his freedom from detention" when he had lived in the United States for approximately 30 years); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 686 (W.D. Tex. 2025) ("Because he spent nearly three years at liberty in the United States, Lopez-Arevelo possesses a cognizable interest in his freedom from detention."); *Martinez*, 2025 WL 2965859, at *4 ("In recent weeks, district courts have considered due process claims in habeas petitions filed by noncitizens without lawful immigration status who entered the United States surreptitiously, like [the petitioner in this case]. Those courts have found that because the petitioners established a life here—albeit [] without authorization—they possessed a strong liberty interest in their freedom from detention."); *Lepe Hernandez*, 2026 WL 990024, at *4 ("[E]ven in circumstances lacking a prior detention, release, and re-detention, noncitizens already in the country who have established a life here—albeit without authorization, possess a strong liberty interest in their freedom from detention.") (citation and internal quotation marks omitted).

The petitioner has lived in the United States since 2012, she works a job, and she is a single mother to two United States citizen minor children who rely on the petitioner for their daily care, emotional guidance, and financial support.  The first *Mathews* factor weighs in the petitioner's favor.  *See, e.g.*, *Zamudio Sanchez*, 2026 WL 596133, at *12 (finding that the first *Mathews* factor favored the petitioner when the petitioner had lived in the United States since 1996, has several children who are United States citizens, and is the sole breadwinner for his family); *Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 253, 258 (D. Mass. 2025) (finding that the petitioner, who had entered the United States without inspection in 2021 and who had since "made a home" in the United States with his wife and daughter, had a "tremendous" private interest under the first

*Mathews* factor); *Lopez Miranda v. Flores*, No. EP-25-CV584-KC, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status").

### B.       The Risk of an Erroneous Deprivation

"Under the second *Mathews* factor, the [c]ourt considers 'whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Martinez*, 2025 WL 2965859, at *4 (quoting *Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025)).

The risk of erroneous deprivation of the petitioner's liberty interest is significant because she has not been afforded any opportunity to be heard regarding her confinement.[3]  Because she has not been given an opportunity to be heard "there is a high risk that [the petitioner] has been and will continue to be erroneously deprived of [her] liberty." *Lopez-Arevelo*, 801 F. Supp. 3d at 686; *see also Lugo Villanueva*, 2026 WL 1045719, at *4 ("The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this automatic continued deprivation of liberty for a noncitizen.") (citation and internal quotation marks omitted).

---

[3] As discussed in Section I, the immigration judge did not consider whether the petitioner poses a flight risk or a danger to the community.  Instead, relying on *Matter of Yajure Hurtado*, the immigration judge found that she lacked jurisdiction to consider the request for release on bond.  (Dkt. No. 1-3 at 22–24).

Here, detaining the petitioner without providing her with an opportunity to contest the reasonableness of her detention creates a substantial risk that she may be erroneously deprived of her liberty.  Without an individualized determination, it cannot be said that detention is warranted in her case.  The second factor favors the petitioner.

## C.      The Government's Interest

In their response, the government does not address its interest in detaining the petitioner, other than arguing that "the [p]etitioner's due process claims are merely challenges to the Government's detention authority[.]"  (Docket Entry No. 7 at 6).  However, "[the petitioner's] constitutional interest in [her] liberty exists above and apart from the INA."  *Martinez*, 2025 WL 2965859, at *4 (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).  While the government has a significant interest in ensuring that noncitizens subject to removal proceedings appear for those removal proceedings and are not a danger to the community, the government does not contend that the petitioner, who has numerous ties to United States citizens and family, is a flight risk or a danger to the community.  Further, these interests could easily be addressed by an individual assessment of the petitioner's flight risk or dangerousness—such as during a bond hearing before an immigration judge, which the government "conducted . . . for decades until its reinterpretation of the law earlier this year."  *Lugo Villanueva*, 2026 WL 1045719, at *4 (internal quotation marks and citation omitted); *see also Destino v. FCI Berlin, Warden*, No. 1:25-CV-374-SE-AJ, 2025 WL 4010424, at *14 (D.N.H. Dec. 24, 2025) (explaining that the third *Mathews* factor favored the petitioner because "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention") (citation omitted).  The Court finds that the third *Mathews* factor favors the petitioner.

Weighing the factors in *Mathews*, the Court finds that the petitioner's continued mandatory detention under § 1225(b), as applied to her, violates her due process rights. *See Destino*, 2025 WL 4010424, at \*14 ("In sum, each of the *Mathews* factors favors [the petitioner]. His detention without a bond hearing violates his rights under the Due Process Clause."); *Lugo Villanueva*, 2026 WL 1045719, at \*4 ("[A]ll three [*Mathews*] factors favor Petitioner, and the Court finds that Petitioner's detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause."); *Aroca v. Mason*, No. 2:26-CV-00057, 2026 WL 357872, at \*19 (S.D.W. Va. Feb. 9, 2026) ("In balancing the interests under the *Mathews* test, I conclude that Petitioners' mandatory detention pursuant to § 1225 violates their procedural due process rights.").[4]

## IV.    APPROPRIATE RELIEF

The petitioner has met her burden of proof by a preponderance of the evidence and she is entitled to relief. "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id*.; *see also Preiser*, 411 U.S. at 484 ("[T]he traditional function of the writ is to secure release from illegal custody."). When a noncitizen "has demonstrated a profound liberty interest in his [or her] freedom from civil detention and a concrete, ongoing deprivation of that liberty without any process provided by Respondents to justify his detention . . . immediate release is appropriate." *Cruz-Reyes v. Bondi*, No. 5:26-CV-60, 2026 WL 332315, at \*6 (S.D. Tex. Feb. 3, 2026). "[A] bond 'hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the

---

[4] The Court does not address the petitioner's other claims because the petition can be resolved on procedural due process grounds.

heart of the Due Process Clause.'" *Id.* (quoting *Gonzalez v. Joyce*, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025)) (internal quotation marks omitted); *see also Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025) ("[A] post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out.") (citations omitted);

The Court determines that immediate release is the appropriate relief for the unlawful detention in this case. *See, e.g.*, *Aroca*, 2026 WL 357872, at *19 ("Petitioners have met their burden of proving that they are being held contrary to law [under the Due Process Clause]. Accordingly, Petitioners' immediate release is warranted.") (internal citation omitted); *Angel v. Noem*, No. 1:26-CV-00384-DAE, 2026 WL 594368, at *5 (W.D. Tex. Mar. 3, 2026) (holding that the petitioner's procedural due process rights had been violated and that immediate release is the appropriate remedy).

## V.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondents' Motion for Summary Judgment (Dkt. No. 7) is **DENIED.**

2. The petition for a writ of habeas corpus filed by Eva Jaimes Landeros (Docket Entry No. 1) is **GRANTED in part**.[5]

3. Any other pending motions are **DENIED as moot**.

4. The respondents are **ORDERED** to release Eva Jaimes Landeros from custody, under conditions of release (if any) no more restrictive than those in place prior to the detention at issue in this case, **within 24 hours of entry of this Order**. The petitioner must be released in a public place within the Southern District of Texas,

---

[5] The petitioner seeks attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. (*See* Dkt. No. 1 at 27). The request is denied because "the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) *cert. denied*, 144 S. Ct. 553 (2024).

and the respondents must notify the petitioner's counsel of the exact location and exact time of the petitioner's release **as soon as practicable and no less than three hours before her release**.

5.      The respondents are **ORDERED** to return to the petitioner, at the time of her release from custody, any and all identification documents taken from her at the time of or during her detention.

6.      If the respondents seek to re-detain the petitioner during the pendency of her removal proceedings, they must provide notice to the petitioner and a pre-detention hearing before an immigration judge at which the government demonstrates, by clear and convincing evidence, that she is a flight risk or a danger to the community. The respondents similarly may not subject the petitioner to additional conditions of release without a similar hearing at which the government bears the burden of showing why new conditions are necessary.

7.      The parties are further **ORDERED** to file a status report **within three (3) days of the date of this Order**, confirming that the petitioner has been released.

The Clerk shall send a copy of this Memorandum Opinion and Order to the parties.

It is so ORDERED.

SIGNED on April 27, 2026, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge

12